```
              UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW HAMPSHIRE
```

Robert S. Cabacoff

   v.                              Case No. 12-cv-56-PB
                                        Opinion No. 2012 DNH 188
Wells Fargo Bank, N.A. et al.


### MEMORANDUM AND ORDER

Robert Cabacoff, a pro se plaintiff, has sued several entities that own, service, or have some other connection to his residential mortgage loan.  Most of his claims can be divided into one of three broad categories.  One set of claims turn on his contention that his loan servicer failed to properly respond to his repeated requests to modify his loan.  Other claims stem from the process by which ownership of his mortgage note was separated from his mortgage, assigned multiple times without his consent, pooled with other loans, and used as security for investment certificates regulated under the federal securities laws.  A third set of claims turn on what he asserts is a fraudulent assignment of his mortgage.

The defendants have moved to dismiss Cabacoff's amended complaint for failure to state a claim.  For the reasons set forth herein, I grant the defendants' motion.

## I.  BACKGROUND[1]

**A.  The Loan**

Robert and Ana Cabacoff obtained a $405,000 mortgage loan from First Franklin, a division of National City Bank of Indiana, ("First Franklin") on August 21, 2006.  The mortgage securing the loan names Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee.  The mortgage states that MERS was acting "solely as a nominee for [First Franklin] and [its] successors and assigns."

The Cabacoffs' loan was sold several times during the month following the closing.  First Franklin sold the loan to First Franklin Financial Corporation, which resold it as a part of a package of loans to an affiliate of Lehman Brothers Holdings, Inc. ("Lehman Brothers").  Lehman Brothers assigned the package of loans to the Structured Asset Services Corporation, which in turn deposited the loans into the First Franklin Loan Trust 2006-FF15 ("Trust").  Wells Fargo was named as trustee of the Trust.  Certificates in the Trust were later sold to investors

---

[1]  I draw the facts from the Amended Complaint (Doc. No. 34) and various documents attached thereto.

in transactions regulated by the federal securities laws.

**B.    Loan Modification Requests**

Cabacoff made multiple unsuccessful attempts beginning in September 2010 to have the terms of his loan modified under the Home Affordable Modification Program ("HAMP").  During the course of this effort, his loan servicer, Select Portfolio Servicing, Inc. ("SPS") violated HAMP guidelines by: (1) requiring Cabacoff to abandon a pending bankruptcy petition in order to be considered for a loan modification; (2) requiring Cabacoff to make a good faith payment as a condition of further negotiations; and (3) failing to provide information concerning the methodology it was using to calculate the Net Present Value ("NPV") of his home.[2]

**C.    Foreclosure Proceedings**

On August 31, 2011, MERS purported to assign the mortgage on the Cabacoffs' property to Wells Fargo.  Approximately two months later, Wells Fargo notified Cabacoff of its intention to foreclose.  Cabacoff sought bankruptcy protection on November

---

[2]   The HAMP guidelines require lenders to determine a borrowers' NPV in determining whether he is eligible for a loan modification.  See Home Affordable Modification Program, Base Net Present Value (NPV) Model v.5.0 Model Documentation, June 1, 2012, https://www.hmpadmin.com/portal/programs/hamp.jsp#6.

3

14, 2011, but his petition was ultimately dismissed on April 2, 2012.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must make factual allegations sufficient to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is plausible when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citations omitted).

In deciding a motion to dismiss, I employ a two-pronged approach. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks, and alterations omitted). A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be

4

dismissed. Id. Second, I credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible. Id. The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.") (citation omitted).

    Pro se pleadings are held to a less stringent standard than those drafted by lawyers and are to be liberally construed in favor of the pro se party. See Estelle v. Gamble, 429 U.S. 97, 106 (1979) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam)); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). Still, pro se litigants must "comply with procedural rules and substantive law." Blaisdell v. City of Rochester, Civil No. 07-CV-390-JL, 2010 WL 3168312, *6 (D.N.H.

5

Aug. 10, 2010) (citing Eagle Eye Fishing Corp. v. U.S. Dept. of Commerce, 20 F.3d 503, 506 (1st Cir. 1994).

I apply these standards in reviewing the motion to dismiss.

### III. ANALYSIS

Cabacoff has filed a rambling twelve-count complaint setting forth approximately twenty claims for relief against SPS, Wells Fargo, and MERS.[3] He seeks unspecified "awards" and "penalties" as well as orders requiring the defendants to forgive his loan and reimburse him for all of the payments he made in connection with the loan. In the sections that follow, I explain why Cabacoff has failed to state a viable claim for relief.

**A. HAMP Claims**

Cabacoff asserts claims against SPS in Count I for breach of contract, breach of the duty of good faith and fair dealing, and violations of various provisions of New Hampshire's Uniform Commercial Code. All of these claims stem from SPS's alleged

---

[3] The amended complaint also names Wells Fargo Home Mortgage, Inc., MERS Corp., and Friedman Law Associates, P.C. as defendants. I dismiss the claims against these defendants because the amended complaint does not plead facts that would support a viable claim against any of them.

6

failure to abide by HAMP guidelines that were promulgated by the Treasury Department and incorporated into the Servicer Participation Agreement ("Participation Agreement") between SPS and the Federal National Mortgage Association ("Fannie Mae"). To succeed on these claims, Cabacoff must either have a private right of action to enforce the guidelines or he must qualify as a third party beneficiary to the Participation Agreement. I address each theory in turn.

1. Private Right of Action under HAMP

For a private right of action to exist, Congress must create it either expressly or by implication. Bonano v. East Caribbean Airline Corp., 365 F.3d 81, 84 (1st Cir. 2004). When Congress does not provide an express right to sue, "the baseline rule is that a federal statute ordinarily should be read as written, in effect creating a presumption against importing by implication a private right of action." San Juan Cable LLC v. P.R. Telephone Co., Inc., 612 F.3d 25, 30 (1st Cir. 2010).

In the present case, the program that Cabacoff seeks to enforce is an executive branch program that was enacted pursuant to authority granted to the Treasury Department by the Emergency Economic Stabilization Act of 2008 ("EESA"). See Supplemental

Directive 09-01, Introduction of the Home Affordable Modification Program, April 6, 2009, available at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd0901.pdf. Thus, if a private right of action exists to enforce HAMP, it must be found in the EESA.

None of the federal courts that have considered the issue have held that HAMP is enforceable through a private right of action. See, e.g., Miller v. Chase Home Fin., LLC, 677 F.3d 1113, 1116 (11th Cir. 2012); Markle v. HSBC Mortg. Corp. (USA), 844 F. Supp. 2d 172, 184 n.12 (D. Mass. 2011) (collecting cases in which courts found that "[n]either the EESA nor HAMP guidelines provide a private right of action"). Cabacoff has not cited any provision of the EESA that supports a contrary conclusion in this case, and he has not offered a reasoned argument that would cause me to question the consensus view that the HAMP guidelines are not enforceable through a private right of action. Accordingly, I decline to find that he has a right to sue directly under the EESA.

2.   Third-party Beneficiary Claim

Under federal law,[4] "only a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract or obtain an appropriate remedy for breach."  GECCMC 2005-C1 Plumer St. Office Ltd. P'ship v. JP Morgan Chase Bank, Nat. Ass'n, 671 F.3d 1027, 1033-34 (9th Cir. 2012).  When the contract in issue is a government contract,[5] a plaintiff must overcome an especially strong presumption that nonparties who benefit from the contract are "incidental, rather than intended, beneficiaries."  Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 128 (D.N.H. 2012).  The "distinction between an intention to benefit a third party and an intention that the third party should have the right to enforce that

---

[4] The parties assume federal law controls, and I see no reason to challenge that assumption.  See Price v. Pierce, 823 F.2d 1114, 1119 (7th Cir. 1987) (stating that "parties to a lawsuit are, within broad limits, entitled to determine what law shall govern their dispute").

[5]  I treat the Participation Agreement as a government contract because Fannie Mae entered into the contract as a "financial agent of the United States."  See Amended and Restated Commitment to Purchase Financial Instrument and Servicer Participation Agreement 1, http://www.treasury.gov/initiatives/financial-stability/programs/housing-programs/mha/Documents_Contracts_Agreements/093010selectportfolioservicingincSPA%28incltransmittal%29-r.pdf.

9

intention" is particularly important "where the promisee is a governmental entity." Astra USA, Inc. v. Santa Clara Cnty., 131 S.Ct. 1342, 1348 (2011) (quoting 9 J. Murray, Corbin on Contracts § 45.6, p. 92 (rev. ed. 2007)).  In such circumstances, a plaintiff cannot establish third-party beneficiary status merely by pointing to "a contract's recitation of interested constituencies, vague hortatory pronouncements, statements of purpose, explicit reference[s] to a third party, or even a showing that the contract operates to the third parties' benefit and was entered into with them in mind." GECCMC, 671 F.3d at 1033 (citations and quotations omitted).  The court must examine the precise language of the contract for a clear intent to rebut the presumption that the [third parties] are merely incidental beneficiaries." Id. at 1033-34.

Neither the Supreme Court nor the First Circuit has addressed the specific third-party beneficiary claims at issue in this case.[6]  Accordingly, to discern whether the contracting

---

[6] The Supreme Court recently addressed a third-party beneficiary claim in the context of a different government contract.  See Astra USA, Inc. v. Santa Clara County, Cal., 131 S.Ct. 1342 (2011).  Other courts have relied on Astra in denying HAMP-

10

parties clearly intended "to rebut the presumption that the [third parties] are merely incidental beneficiaries," id., I turn to the text of the Participation Agreement and look for any provisions evincing a "clear intent" to confer third-party beneficiary status on borrowers. See Moore, 848 F. Supp. 2d at 128 (D.N.H. 2012).

Cabacoff does not point to any specific language in the Participation Agreement that demonstrates that the parties intended to confer third-party beneficiary status on homeowners. In fact, the contract language suggests the opposite: that the parties intended to foreclose claims by non-signatories.

---

related contract claims. See, e.g., Wigod, 673 F.3d at 581 n.4; Allen v. CitiMortgage, Inc., CIV. CCB-10-2740, 2011 WL 3425665 (D. Md. Aug. 4, 2011); Warner v. Wells Fargo Bank, N.A., SACV 11-00480 DOC, 2011 WL 2470923 (C.D. Cal. June 21, 2011). Astra, however, involved a government contract that was created pursuant to a federal statute and the statutory terms were included verbatim in the contract. Astra, 131 S.Ct. at 1345. In that context, the Court held that Congress's decision not to include a private right of action in the statute was dispositive of the plaintiff's third-party beneficiary claim because Congress's decision "would be rendered meaningless" if the affected parties could sue to enforce the contract as third-party beneficiaries. Id. at 1347. Here, in contrast, the HAMP program is an executive branch program created pursuant to a Congressional mandate set out in the EESA in very general terms. The contract Cabacoff seeks to enforce does not merely incorporate the language of the EESA. Therefore, Astra is not dispositive of Cabacoff's third-party beneficiary claim.

11

Section 11(E) states, "The Agreement shall inure to the benefit of and be binding upon the parties to the Agreement and their permitted successors-in-interest." See Participation Agreement, http://www.treasury.gov/initiatives/financial-stability/programs/housing-programs/mha/Documents_Contracts_Agreements/093010selectportfolioservicingincSPA%28incltransmittal%29-r.pdf. Other courts have concluded that this exact language is "incompatible with an intent to bestow enforceable rights upon nonparties." Moore, 848 F. Supp. 2d at 128; Markle, 844 F. Supp. 2d at 182; Martinez v. Bank of Am. Nat. Ass'n., No. 3:10-cv-00287-RCJ-RAM, 2010 WL 4290921 (D. Nev. Oct. 20, 2011). See also Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1212 (9th Cir. 1999) (finding that similar language in a government contract stating, "This contract binds and inures to the benefit of the parties hereto, their successors and assigns," indicated the parties' intent to limit the intended beneficiaries to the contracting parties).

Moreover, the mere fact that Fannie Mae and SPS entered into the Participation Agreement "with the intent of aiding home-loan borrowers" does not itself demonstrate the parties'

12

intent to "secure an enforceable right for non-parties." Wright v. Bank of Am., N.A., No. CV 10-01723 JF (HRL), 2010 WL 2889117, at *4 (N.D. Cal. July 22, 2010). See also Marks v. Bank of Am., N.A., 2010 WL 2572988 *5 (D. Ariz. 2010). A court cannot infer intent to confer third-party beneficiary status on a plaintiff from the mere fact that the contracting parties had the beneficiary in mind when creating the contract. For example, in Orff v. United States, 358 F.3d 1137 (9th Cir. 2004), the Ninth Circuit "declined to extend enforceable rights to a group of California farmers . . . despite the fact that the farmers were explicitly referred to in and benefitted by the contract and were clearly 'in [the] mind' of the contracting parties." GECCMC, 617 F.3d at 1034 (citing Orff, 358 F.3d at 1141, 1145).

In summary, Cabacoff has failed to overcome the presumption that third party beneficiaries to government contracts are incidental rather than intended beneficiaries. Accordingly, I join the majority of courts that have addressed the question in concluding that a homeowner lacks the authority to enforce the HAMP contract as a third-party beneficiary. See, e.g., Moore, 848 F. Supp. 2d at 128 (collecting cases); but see Marques v. Wells Fargo Home Mortg., Inc., 2010 WL 3212131, *4 (S.D. Cal.

13

Aug. 12, 2010) (concluding that homeowners have third-party beneficiary status to enforce HAMP contracts).[7]

**B.   Securitization Claims**

With the exception of Counts 4, 10, 11, and 12, all of Cabacoff's remaining claims challenge the process by which his loan was securitized. Among other things, he argues that: (1) MERS could not serve as the mortgagee for his mortgage because it was a mere shell corporation that never held the note that the mortgage secured; (2) the assignments of his note were improper because they were made without his consent and stripped the assignors of assets that otherwise could be used to pay future judgments against them; and (3) the process of pooling his loan with other loans and using the loans as security for other investments violates the securities laws, the antitrust laws, the tax laws, and the federal RICO statute.

All of Cabacoff's claims in this category are fatally

---

[7] Cabacoff cursorily raises claims under the duty of good faith and fair dealing; Section 1482 of the Dodd-Frank Wall Street Reform Consumer Protection Act, 12 U.S.C. § 5219a (2010); and Article 1-103(a) and (b), N.H. Rev. Stat. Ann. § 382-A:1-103, and Article 1-203 of the New Hampshire Uniform Commercial Code. N.H. Rev. Stat. Ann. § 382-A:1-102. Each of these claims requires a predicate contract that Cabacoff is entitled to enforce. No such contract exists in this case. Accordingly, each claim fails.

14

flawed.  It is not unlawful as a general rule for a lender to designate a nominee to serve as a mortgagee for a note held by the lender.  Nor is it improper as a general rule for a lender to assign a loan to a third party for valuable consideration.  Cabacoff has not pleaded any facts that suggest that First Franklin's use of MERS as a nominee for the mortgage was unlawful.  Nor has he alleged either that his note included a non-assignment clause or that the challenged assignments were made for less than fair value.  Thus, he has no basis for his arguments that the use of a nominee and the assignments of his note were improper.

Cabacoff's attempt to base claims on the securities laws, the tax laws, and the antitrust laws are also unavailing.  Cabacoff does not have standing under the securities laws to challenge the process by which his note was securitized because he was neither a buyer nor a seller of the challenged securities.  E.g., Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 768 n.5 (1st Cir. 2011) (stating that plaintiff suing under § 11 and § 12(a)(2) must be a buyer or seller of securities); Hill v. Gozai, 638 F.3d 40, 54 (1st Cir. 2011) (stating same for § 10(b)).  He also

lacks standing to enforce the tax laws.  See Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 46 (1976), (Stewart, J., concurring) ("I cannot now imagine a case, at least outside the First Amendment area, where a person whose own tax liability was not affected ever could have standing to litigate the federal tax liability of someone else."); Booth v. Ioane, 2012 WL 3839286 (E.D.Ca. Sept. 4, 2012) ("Section 7401 does indeed prohibit a private party from enforcing the federal income tax code or vindicating the interests of the Internal Revenue Service."); Schuloff v. Queens College Fdn., Inc., 994 F. Supp. 425, 428 (E.D.N.Y. 1998) (stating that the language in § 7401 supports denial of a private right of action to enforce the tax code).  Because he does not allege an antitrust injury, his antitrust claim is also defective.  E.g., New York Airlines, Inc. v. Dukes Cnty., 623 F. Supp. 1435, 1450 (D. Mass. 1985) (stating that to prevail on an antitrust claim a plaintiff must allege an antitrust injury and citing cases from the Second, Fourth, and Eighth Circuits that are in accord).

    Cabacoff's RICO claim suffers from multiple deficiencies. Although he alleges generally that the defendants engaged in a fraud scheme, he has failed to plead two predicate acts of fraud

16

with particularity, which is a requirement for a viable RICO claim.  Ahmed v. Rosenblatt, 118 F.3d 886, 888 (1st Cir. 1997).  Further, he has not sufficiently alleged that his claimed injuries were proximately caused by defendants' predicate acts of racketeering.  He cannot recover on a RICO claim without proof that his claimed injuries were caused by the alleged pattern of racketeering activity.  Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 481 (1985).  Accordingly, Cabacoff has failed to plead a viable RICO claim.[8]

C.   **Fraudulent Assignment Claims**

In Counts 4, 11, and 12, and at other points in the amended complaint, Cabacoff alleges that the defendants are liable for

---

[8]  Cabacoff raises several other claims that also fail.  His Fair Debt Collection Practices Act claim against MERS fails because he has not alleged that MERS was attempting to collect a debt.  Beadle v. Haughy, No. Civ. 04-272-SM, 2005 WL 300060, *3 (D.N.H. 2005).  His claim under Fed. R. Civ. P. 17(a) against MERS is a nonstarter because 17(a) merely states a threshold requirement for plaintiffs bringing suit; it does not provide a theory of liability.  United HealthCare Corp. v. Am. Trade Ins. Co., Ltd., 88 F.3d 563, 569 (8th Cir. 1996).  His claims for misprision of felony and bank fraud fail because there is no private right of action to enforce either criminal statute.  See Schneider v. Bank of Am., N.A., 2012 WL 761975, *8 (E.D.Ca. Mar. 12, 2012) (finding no private cause of action for bank fraud and collecting cases in accord); Massad v. Greaves, 554 F. Supp. 2d 163, 166-67 (D. Conn. 2008) (finding same for misprision of felony).

fraud to the extent that they participated in what Cabacoff contends is a fraudulent assignment of his mortgage from MERS to Wells Fargo.

Cabacoff argues that the assignment is fraudulent both because MERS was not the mortgagee when the assignment was allegedly made, and because Barbara Neale, who executed the assignment, was not authorized to act on behalf of MERS. Cabacoff seeks to support this claim with several arguments. First, he asserts that MERS lacked authority to make the assignment because it acquired the mortgage as First Franklin's nominee, and First Franklin was no longer in existence when the assignment was purportedly made. Second, he points to representations in an October 25, 2006, Prospectus Supplement for the offering of investment certificates by the Trust that details a chain of loan assignments that culminated in an assignment of First Franklin Mortgage loans to the Trust well before August 31, 2011. According to Cabacoff, these assignments necessarily would have involved both his note and his mortgage. Thus, he asserts that MERS could not have been the mortgagee as First Franklin's nominee on August 31, 2011. Finally, he argues that Neale lacked the authority to execute

18

the assignment on behalf of MERS because she was an employee of SPS rather than MERS when she made the assignment.

Even if I assume that Cabacoff has pleaded his fraud claim with particularity, he is not entitled to recover damages for fraud because reliance is an essential element of a fraud claim, see Van Der Stok v. Van Voorhees, 151 N.H. 679, 681 (2005), and he has failed to allege that he relied to his detriment on the fraudulent representations made in the assignment.[9]

### D.  **Due Process Claim**

Cabacoff claims in Count 10 that a non-judicial foreclosure violates the Fifth and Fourteenth Amendments of the United States Constitution.  Cabacoff has not made this claim in support of an attempt to enjoin a potential foreclosure.  Nor has he alleged that he is facing an imminent threat of foreclosure.  Accordingly, his claim is not ripe for review. See Nat'l Park Hospitality Ass'n. v. Dept. of Interior, 538 U.S. 803, 807 (2003).  Thus, I dismiss it without prejudice.

---

[9] In dismissing these claims, I do not determine whether Cabacoff will be entitled to raise his fraud claim in a future action to enjoin a foreclosure.  Cabacoff has not sought such relief in this action.  Therefore, I have no reason to address such a claim here.

19

## IV. <u>CONCLUSION</u>

For the aforementioned reasons, I grant defendants' motion to dismiss (Doc. No. 36). All claims except Count 10 are dismissed with prejudice. Count 10 is dismissed without prejudice.

SO ORDERED.

<u>/s/Paul Barbadoro</u>
Paul Barbadoro
United States District Judge


November 5, 2012

cc:   Robert S. Cabacoff, pro se
      William P. Breen, Esq.